1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROL TURNER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No.  2:19-CV-2222-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 7, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Pending before the court are the parties' briefs on the merits, ECF Nos. 14 and 18.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1

1  a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

2  including both the evidence that supports and detracts from the Commissioner's conclusion, must

3  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

4  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

6  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13  Cir. 1988).

14  　　　　For the reasons discussed below, the Commissioner's final decision is affirmed.

15

16  **I.  THE DISABILITY EVALUATION PROCESS**

17  　　　　To achieve uniformity of decisions, the Commissioner employs a five-step

18  sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§

19  404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

20  　　　　Step 1　Determination whether the claimant is engaged in
21  　　　　substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

22  　　　　Step 2　If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe
23  　　　　impairment; if not, the claimant is presumed not disabled and the claim is denied;
24

25  　　　　Step 3　If the claimant has one or more severe impairments, determination whether any such severe impairment meets
26  　　　　or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is
27  　　　　presumed disabled and the claim is granted;

28  / / /

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

1

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 1, 2016.  See CAR 15.[1]  In the application, plaintiff claims disability began on May 27, 2016.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on October 10, 2018, before Administrative Law Judge (ALJ) Daniel Myers.  In a December 17, 2018, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1.   The claimant has the following severe impairment(s): degenerative disc disease of the spine; osteoarthritis; migraine headaches; bipolar disorder; schizoaffective disorder; and anxiety disorder;

2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.   The claimant has the following residual functional capacity: the claimant can perform light work; she is limited to only occasional stooping, kneeling, crouching, crawling, and climbing stairs; she must avoid hazards such as unprotected heights, dangerous moving machinery, and temperature extremes; the claimant is limited to routine, repetitive tasks; she is limited to no more than occasional changes to the routine work setting; and she is limited to no more than occasional interactions with members of the public, coworkers, and supervisors;

4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 18-28.

After the Appeals Council declined review on September 19, 2019, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]      Citations are the to the Certified Administrative Record (CAR) lodged on March 9, 2020.  See ECF No. 10.

4

### III.  DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ improperly rejected the opinions of treating mental health professionals, Thomas Sterling, LCSW, and Katherine Wagner, NP; (2) the ALJ improperly assessed Plaintiff's credibility; and (3) the ALJ improperly rejected lay witness evidence offered by Plaintiff's daughter.

### A.    Medical Opinions

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

/ / /

1    The weight given to medical opinions depends in part on whether they are

2  proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

3  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

4  professional, who has a greater opportunity to know and observe the patient as an individual, than

5  the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

6  Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the

7  opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th

8  Cir. 1990).

9    In addition to considering its source, to evaluate whether the Commissioner

10  properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in

11  the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

12  uncontradicted opinion of a treating or examining medical professional only for "clear and

13  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

14  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

15  by an examining professional's opinion which is supported by different independent clinical

16  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

17  1041 (9th Cir. 1995).

18    A contradicted opinion of a treating or examining professional may be rejected

19  only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

20  at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

21  facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

22  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

23  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

24  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

25  without other evidence, is insufficient to reject the opinion of a treating or examining

26  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

27  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

28  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

6

1    also <u>Magallanes</u>, 881 F.2d at 751.

2            At Step 4, the ALJ considered the medical opinion evidence of record. <u>See</u> CAR

3    24-25. "Great weight" was given to the opinions of agency non-examining medical consultants,

4    Drs. Kwun and Ligon, who opined that Plaintiff can perform a wide range of light work with

5    some limitations. <u>See id.</u> at 24. The ALJ assigned "partial weight" to the opinions of agency

6    non-examining mental health consultants, Drs. Anguas-Keiter and Stephenson. <u>See id.</u> at 24-25.

7    As to these opinions, the ALJ stated:

8

9          In October 2016 and January 2017, State agency psychological
          consultants, Janet Anguas-Keiter, Psy.D., and Mack Stephenson, Ph.D.,
          opined the claimant was able to complete simple instructions, to follow

10         directions without additional assistance, and to maintain adequate
          attention, concentration, persistence, and pace as needed to complete a full
          workday/work-week. They opined the claimant was able to maintain

11         appropriate behavior with others; however, would do best in a position
          that involves no public interaction. They further opined the claimant was

12         able to accept simple instructions and respond appropriately to feedback
          from supervisors. (B2A; B3A; B7A; B8A). Partial weight is afforded to

13         their opinions, as they are generally consistent with the record evidence.
          Their opinions are generally consistent with not only the claimant's need

14         of continued outpatient mental health treatment, but also for the
          improvement in her mental health with her prescribed course of treatment.

15         Greater weight was not afforded to their opinions, as the record
          demonstrates that with treatment, the claimant began attending Church

16         regularly and interacting with others on a consistent basis. Moreover,
          mental status examination findings consistently throughout the record

17         demonstrated the claimant was cooperative. As such, the undersigned has
          determined the claimant is able to interact with member of the public on

18         no more than an occasional basis.

19         CAR 24-25.

20            The ALJ also considered opinions offered by Thomas Sterling, a licensed clinical

21    social worker, and Katherine Wagner, a nurse practitioner. <u>See id.</u> at 25. Both are treating

22    sources. <u>See id.</u> The ALJ gave both professionals' opinions "little weight." <u>Id.</u>

23            Plaintiff contends the ALJ erred in rejecting the opinions of Mr. Sterling and Ms.

24    Wagner.

25    / / /

26    / / /

27    / / /

28    / / /

1.      Mr. Sterling

As to Mr. Sterling, the ALJ stated:

In August 2018, Thomas Sterling, LCSW, the claimant's therapist, opined that as a result of her mental impairments, the claimant was unable to work.  He also opined that the claimant requires supportive services to remain stable in the community.  (B21F).  Little weight is afforded to Mr. Sterling's opinion, as the issue of disability is one that is reserved to the Commissioner.  As such, this opinion is not binding on the Administration because it involves non-medical issues that are not of the expertise of the medical/mental health profession.

CAR 25.

Plaintiff contends:

. . . Treating psychotherapist Sterling opined (transc., p.1125) that Ms. Turner's schizoaffective disorder, bipolar type, and generalized anxiety disorder "interfere with her daily function, prevent her from focusing on activities of daily living," "are persistent and expected to last more than one year," render her "not able to work due to her disability, "and make it so she "requires supportive services to remain stable in the community."
        This decision gives all this "little weight" *solely* because "the issue of disability is one that is reserved to the Commissioner." (Transc., p.25) Doubtless, the decision has in mind 20 C.F.R. §§404.1527(d)(1)/ 416.927(d)(1); the determination whether a claimant is disabled is an "issue reserved to the Commissioner." (*Id.*) However, this just means such an opinion is "entitled to no special significance," (*id.,* subsections (d)(3)), such as because this treating therapist had a treating relationship with Ms. Turner and because that relationship was longstanding (see subsections (c)(2)(i) and (ii)); it is not a valid reason in itself for outright rejection. (*Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998) [uncontroverted opinion of treating physician on ultimate issue of disability must nonetheless be rejected for clear and convincing reasons; controverted opinion of disability must be rejected with specific and legitimate reasons].)
        Here, the nonexaminers in effect opined nondisability, arguably (footnote omitted) putting disability in controversy, but Mr. Sterling proclaiming Ms. Turner "not able to work due to her disability," did not relieve the decision from having to give reasons to disregard his opinions. If indeed controverted, the standard would be the requirement of giving specific and legitimate reasons based on substantial evidence in the record. (*Id.*; *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995)) A treating psychotherapist constitutes "other source" or "non-acceptable medical source" testimony. (20 C.F.R. §§404.1527(f)/416/927(f); 404.1513(d)/ 416.913(d)) Non-acceptable medical sources must be considered using the same factors applied to treating physicians and "may outweigh the medical

8

opinion of an acceptable medical source." (20 C.F.R. §§404.1527(f))/
416/927(f)) The weight given them must be explained in a manner
allowing subsequent review. (Subsections(f)(2)) Here no reason has been
given, except this unacceptable one, misstating the law.

But LCSW Sterling expressed *other*, completely cognizable and
relevant, opinions about Ms. Turner's functioning, opinions relevant in
themselves, directly to the step-three listing criteria, and as implying
work-related functioning: that Ms. Turner's mental impairments (1)
interfere with her daily function, (2) prevent her from focusing on
activities of daily living, (3) are persistent and expected to last more than
one year, and (4) make it so she requires supportive services to remain
stable in the community. The decision fails altogether to address *these,*
and their basic thrust that Ms. Turner's activities of daily living are
impaired, that this is because of impaired focus, and that the severity of
impairment is so great that Ms. Turner requires assistance simply to live in
her apartment, feed, and otherwise maintain, herself, directly contradict
interpretations of the record on which the decision heavily relies to find
Ms. Turner not disabled — e.g., that her physical appearance, normal
aspects of mental status exams, cooperation with examiners, remarks to
them about feeling any "improvement" (and see fn.2), limited social
engagements (i.e., church, shopping), and simply the decision's chosen
interpretation of what the nature and course of her mental health treatment
connoted, form a rational basis for the decision's nondisabling mental
residual functional capacity and its rejection of opinions and testimony of
greater limitation.

All this, critical testimony remains untouched by the decision's
sole, improperly wielded reason for rejection and, in fact, is confirmed by
all aspects of the record, except the nonexaminers' opinions that, expressly
and somewhat blindly, followed the result of the prior ALJ decision,
including the awkward fact that Ms. Turner was living in supportive
housing for mentally disabled people and required a prescription for In-
Home Supportive Services to keep her apartment there clean because her
anxiety kept her from doing so herself.

ECF No. 14, pgs. 6-8.

Mr. Sterling prepared a letter on August 23, 2018, concerning Plaintiff.  See CAR
1125 (Exhibit B21F).  Mr. Sterling wrote:

This letter is to verify that I have been treating Ms. Carol Turner, DOB
12/10/1965 for DSM 5.0 diagnosis F25.0 Schizoaffective Disorder,
Bipolar Type and F4.1 Generalized Anxiety Disorder.  Ms. Turner
continues to have symptoms of both disorders that interfere with her daily
function, prevent her from focusing on activities of daily living and are

/ / /

/ / /

9

1   persistent and expected to last more than one year.  Ms. Turner is not able
2   to work due to her disability and requires supportive services to remain
    stable in the community.

3   Id.

4   The ALJ rejected Mr. Sterling's opinions, finding that they went to the ultimate issue of disability

5   which is reserved for the Commissioner.

6   The Court finds no error.  To the extent Mr. Sterling opined that Plaintiff is unable

7   to work due to disability, the ALJ properly rejected that opinion as one going to the ultimate issue

8   of disability which is reserved to the Commissioner.  To the extent Mr. Sterling opined that

9   Plaintiff has symptoms that interfere with daily living, prevent her from focusing on activities of

10  daily living, and require supportive services, those opinions are conclusory in that Mr. Sterling

11  fails to specify which symptoms interfere with which activities and to what extent Plaintiff is

12  limited.  Moreover, these opinions are not supported in any way with reference or citation to

13  objective clinical findings made by Mr. Sterling during the course of treatment.

14      2.    Ms. Wagner

15  As to Ms. Wagner, the ALJ stated:

16  In September 2018, Katherine Wagner, NP, treating nurse practitioner,
    opined the claimant was frequently able to understand, remember, and
17  carry out very short and simple instructions but would only rarely to
    occasionally be able to understand, remember, and carry out detailed
18  instructions.  She opined the claimant would rarely to occasionally be able
    to maintain attention and concentration for at least two hours, and
19  maintain regular attendance and be punctual within customary tolerances.
    She further opined the claimant was unable to complete a normal workday
20  and workweek without interruptions from psychologically based
    symptoms, and to perform at a consistent pace.  (B22F).  Little weight is
21  afforded to Mrs. Wagner's opinion.  Her assessment of the claimant's
    mental abilities is not supported by mental status examination findings and
22  is inconsistent with other substantial evidence.  Specifically, her opinion is
    unsupported as there is an absence, in . . . documented objective findings
23  of a referral for the claimant for inpatient hospitalization for alleged
    disabling mental condition.  Noteworthy in this case is the scarcity of
24  objective mental status findings concerning the claimant's functional
    limitations and restrictions due to her mental impairments.  A review of
25  Mrs. Wagner's progress notes reflects routine outpatient care, and there
    were no specific limitations or restrictions given regarding the claimant's
26  mental abilities indicated in her treatment records following the routine
    psychotherapy sessions.  A fair reading of her care reflects nonspecific
27  treatment in the nature of routine mental status examinations, outpatient
    therapy, and prescription medications for the claimant's symptoms.  In the
28  instant claim, Mrs. Wagner's above-noted opinion that the claimant was

unable to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace is unsupported and is inconsistent with her notes and the medical record as a whole.  Based on the foregoing, the undersigns finds that there are specific and legitimate reasons to reject Mrs. Wagner's unreasonably restrictive assessment, and therefore, accords little weight to her opinion.

CAR 25.

Plaintiff argues:

. . . The decision was far more extravagant in detailing reasons for rejecting Ms. Turner's other psychotherapist, who authored an assessment form full of work-related mental limitations (transc., p.1127), but the same standard of giving specific and legitimate reasons based on substantial evidence in the record applies.

First, says the decision, these opinions are "not supported by mental status examination findings and is inconsistent with other substantial evidence" (transc., p.25), but this sets up a nonexistent standard and is unexplained, incomplete, for neither the regulations nor case law require opinions of mental limitations be backed by MSE findings while the "other substantial evidence" is unidentified and both throughout this brief and just two and three paragraphs above it's been emphasized that substantial evidence about Ms. Turner and her lifestyle *coincides* with levels of considerable limitation; then the decision, betraying recycling from another decision, clarifies these things as meaning "Specifically, that "there is an absence, in his [sic] documented objective findings, of a referral for the claimant for inpatient hospitalization." (*Id.*) But being mentally hospitalized is not a threshold requirement either to authenticate work-related mental function opinions or of disability, nor does NP Wagner anywhere assert anything about Ms. Turner being hospitalized such that the absence of corresponding hospitalization sets up a contradiction. It beggars the imagination why such a templated rationale would be heedlessly deployed considering the legions of claimants awarded disability for psychiatric reasons without setting foot in mental hospitals, unless the aim is to achieve through numerousness of reasons what can't be achieved through pertinence or properness of them.

The next sentence could confirm this, for it makes no sense, and like the previous one insists on a linkage with its predecessor: "Noteworthy in this case is the scarcity of objective mental status findings concerning the claimant's functional restrictions due to her mental impairments." (*Id.*) But MSEs do not inquire after work-related mental limitations; the sentence is incongruous. MSE findings don't directly correlate with work-related mental limitations, and it is perfectly possible to pass a mental status exam and be unable to work.

Next, the decision says "progress notes" reflect "routine outpatient care" and "no specific limitations or restrictions" are given in them. (*Id.*) But it would be an unusual tangent for a psychotherapy session chart to begin to babble about work-related mental limitations; this decision would be the first to accuse Ms. Turner of having had an illegitimate hand in any such divagation. The decision continues, with what it calls "A fair reading" of Ms. Turner's "care" as reflecting "nonspecific treatment in the nature of routine mental status examinations, outpatient therapy, and

1    prescription medications." (*Id.*) This is not rationale for rejecting NP
     Wagner but rather rationale explaining what's found in Ms. Turner's
2    charts *instead of* the wished for excursus into work-related mental
     functions.
3            Finally, the decision tackles its apparently most formidable foe, NP
     Wagner's opinion that Ms. Turner would be unable to complete workdays
4    and work weeks and perform at a consistent pace. This, insists the
     decision, "is unsupported and is inconsistent with her notes and the
5    medical record as a whole." (*Id.*) But, though the decision thinks otherwise
     (cf. its next sentence), this is far too vague and unspecific, too unsupported
6    by explanation or citation to the record, to be reviewable, let alone to meet
     the "specific and legitimate" standard.
7
     ECF No. 14, pgs. 8-10.
8

9           Ms. Wagner completed a Mental Assessment Form on September 5, 2018.  See

10   CAR 1127 (Exhibit B22F).  Ms. Wagner opined that Plaintiff can never complete a normal

11   workday or workweek, perform at a consistent pace, accept instructions and respond

12   appropriately to criticism, get along with co-workers, or set realistic goals or make plans

13   independently.  See id.  Ms. Wagner also opined that Plaintiff can rarely remember work-like

14   procedures, understand and remember detailed instructions, carry out detailed instructions,

15   maintain attention and concentration for at least two hours at a time, respond appropriately to

16   changes in the work setting, and deal with stress.  See id.  Ms. Wagner further opined that

17   Plaintiff can occasionally carry out short and simple instructions, maintain regular attendance,

18   sustain an ordinary routine, work in coordination with others, make simple work decisions, and

19   ask simple questions.  See id.  Finally, Ms. Wagner opined that Plaintiff can frequently

20   understand and remember very simple and short instructions.  See id.  Ms. Wagner does not list

21   any specific objective clinical findings to support her opinions.

22          Again, the Court finds no error in the ALJ's analysis.  As the ALJ correctly

23   observed, Ms. Wagner's opinion is presented on a check-the-box form with no reference or

24   citation to supporting objective clinical findings.  The ALJ properly rejected Ms. Wagner's

25   conclusory opinions as unsupported.

26   / / /

27   / / /

28   / / /

12

1    **B.**     **Credibility**

2           The Commissioner determines whether a disability applicant is credible, and the

3    Court defers to the Commissioner's discretion if the Commissioner used the proper process and

4    provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

5    credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

6    F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

7    821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

8    and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

9    evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

10   credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

11   1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

12   and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

13          If there is objective medical evidence of an underlying impairment, the

14   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

15   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

16   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

17                  The claimant need not produce objective medical evidence of the
                    [symptom] itself, or the severity thereof.  Nor must the claimant produce
18                  objective medical evidence of the causal relationship between the
                    medically determinable impairment and the symptom.  By requiring that
19                  the medical impairment "could reasonably be expected to produce" pain or
                    another symptom, the Cotton test requires only that the causal relationship
20                  be a reasonable inference, not a medically proven phenomenon.

21                  80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
                    Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
22

23          The Commissioner may, however, consider the nature of the symptoms alleged,

24   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

25   947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

26   claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

27   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

28   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and

                                            13

1    (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See

2    Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

3    claimant cooperated during physical examinations or provided conflicting statements concerning

4    drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

5    claimant testifies as to symptoms greater than would normally be produced by a given

6    impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

7    Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

8              At Step 4, the ALJ evaluated Plaintiff's statements and testimony and determined

9    they lacked credibility.  See CAR 21-24.  In doing so, the ALJ stated:

> Throughout the record and at the hearing, the claimant alleges disability
> based on the symptoms of her physical impairments, and the limiting
> effects thereof, e.g., difficulty with lifting, sitting, standing, walking,
> bending, and climbing stairs.  She also alleges disability based on the
> symptoms of her mental impairments, the limiting effects thereof, e.g.,
> difficulty concentrating, remembering, understanding, and completing
> tasks.  While the medical evidence of record establishes that such
> conditions and symptoms are present, the record as a whole does not fully
> corroborate the disabling severity of symptoms and degree of limitation
> alleged herein.  In particular, the undersigned notes that the claimant's
> joint and back pain did not require extensive medical treatment.  More
> specifically, the course of treatment implemented by the claimant's
> doctors was decidedly conservative, to include prescribed pain
> medications and physical therapy modalities.  Similarly, the claimant's
> mental impairments were routinely treated with outpatient psychotherapy
> and medications.  The preponderance of the medical and other evidence in
> the record shows that her mental and physical impairments continued to
> improve, as evidenced by the claimant's own statements, along with the
> generally unremarkable physical and mental status examination findings
> reported by treating physicians and examining physicians. . . .

                              * * *

> A careful review of the medical and other evidence of record has revealed
> stark contrasts between the claimant's allegations and the objective and
> clinical findings.  Although the record documents a history of treatment of
> back pain, the record contains multiple routine visits in which physical
> examination of the claimant's musculoskeletal system yielded essentially
> benign findings.  For instance, during the period from May 2016 through
> September 2016, pain management treatment notes from Advanced Pain
> Diagnostic & Solutions show that the claimant reported severe back pain.
> Physical examination showed the claimant had muscle spasms and
> tenderness in her lumbar spine with moderate pain with motion.  As
> confirmed through diagnostic imaging, the claimant was diagnosed with
> spondylosis with radiculopathy of the lumbar spine.  The claimant's
> course of treatment was conservative, as it consisted of prescription pain
> medication, physical therapy, steroid injections, and routine follow-up

                              14

1  care.  Important to note is that the claimant reported that her pain
   medications (Norco and Baclofen) were helping with her back pain.
2  (B7F/2-16, 22, 27; B9F).

3  Also in September 2016 and November 2016, the claimant presented to
   the Molina Medical Center for treatment of back pain and leg pain.
4  Physical examination of the claimant's lumbar spine showed she had no
   atrophy.  She had normal lordotic curvature.  Although the claimant had
5  tenderness to palpation of the paraspinal muscles, her range of motion was
   within functional limits in all three planes.  Her straight leg raise tests
6  were negative.  The claimant's Patrick's sign was also negative.  However,
   she had positive facet loading bilaterally at L3-4, L4-5, and L5-S1.  Her
7  neurological system was within normal limits with the exception of the
   reduced deep tendon reflexes.  Her conservative course of treatment
8  remained unchanged.  Of note, the claimant's physical therapy was
   terminated due to failure for her to reschedule her last appointment in
9  February 2016. (B14F/10, 14, 18; B15F).

10 From February 2017 through April 2017, the claimant participated in
   physical therapy at the Burger Physical Therapy.  In September 2017 and
11 October 2017, treatment notes from Sacramento Native American Health
   Center show that the claimant had tenderness with moderate pain with
12 range of motion in her lumbar spine.  It should be noted that the claimant
   again declined the physical therapy referral. (B18F/103, 108; B23F).
13
   Most recent treatment notes from Golden Shore Medical Center (from
14 April 2018 through August 2018) show the claimant's back pain continued
   to remain under good control with her prescribed medication.  Most
15 notably, the claimant reported that she was able to complete full activities
   of daily living with her current regimen.  This is significant in light of the
16 claimant's reports of total disability.  Moreover, physical examination
   findings show that although the claimant had tenderness to palpation of
17 the lumbar spine, her range of motion was within functional limits in all
   planes.  Her straight leg raise tests and Patrick's tests were negative.
18 (B20F).

19 Turning to the claimant's osteoarthritis of the knees, routine pain
   management visits for her back pain showed the claimant's knee pain was
20 stable.  When the claimant would present for outpatient treatment of
   knee pain, clinical findings from Sacramento Native American Health Center
21 show the claimant's knees were normal.  At other times, the claimant was
   noted as having weak right knee muscles and moderate pain with range of
22 motion.  Diagnostic imaging of the claimant's right knee (in October
   2017) was normal.  Noteworthy in this case is that in March 2017,
23 treatment notes from Sacramento Native American Health Center show
   that although she was unable to adequately clean due to decreased
24 mobility, she only needed help with cleaning.  Otherwise, she was able to
   cook and did not require assistance with caring for her personal needs.
25 Further, in April 2017, clinical findings show the claimant's back pain was
   controlled with medication. (B7F; B18F/14, 28, 103, 138).  Such a body of
26 objective evidence is not fully consistent with the claimant's reports of
   total disability.  As such, the undersigned has adequately accounted for the
27 claimant's back and joint pain by limiting her to performing a reduced
   range of light work with the limitations contained in the above-determined
28 residual functional capacity.  In so finding, the undersigned has not only

15

accounted for the claimant's need of continued outpatient pain management treatment and medication, but also for the generally stable physical examination findings contained throughout the record.

The claimant's migraine headaches have also been considered. However, despite the claimant's subjective complaints, the medical evidence of record reveals generally unremarkable neurological findings. For example, the claimant had no cranial nerve or motor deficit. Her reflexes were normal. The claimant was also negative for focal weakness, lightheadedness, tremors, near syncope, seizures, or vertigo. (B7F/15, 22, 32, 39, 47, 71, 115; B11F; B14F/9, 12, 16; B17F/9, 36; B19F/19; B23F/12). Nevertheless, the undersigned has accounted for the claimant's history of migraine headaches by limiting her to the avoidance of hazards such as unprotected heights and dangerous, moving machinery; and exposure to temperature extremes.

The evidence also supports a finding that the claimant's mental impairments are not as limiting as she alleges. While the medical file confirms the presence of the claimant's psychological symptoms, there exist good reasons to doubt the severity claimed in relation thereto. For instance, the evidence shows that from June 2016 through September 2016, treatment records from Fair Oaks Psychiatric Associates and Native American Health Center show the claimant was neat, clean, and casually dressed. Her grooming was appropriate. Although depressed, the claimant was cooperative. She was alert, and oriented to person, place, time, and date. Her thought processes were linear, and her judgment was intact. The claimant denied suicidal or homicidal ideations. The claimant reported that attending Church helped her remain calm, and gave her purpose. She also reported connecting with new friends. The claimant was diagnosed with schizoaffective disorder, bipolar type, depressive type, and panic disorder. (B8F; B11F/14, 22, 30, 47, 51, 55).

Thereafter, the longitudinal treatment and evaluative history is significant for some ongoing therapy and the administration of psychotropic medications (Zoloft, Bupropion, Xanax, Buspirone, and Mirtazapine); yet, the preponderance of the evidence indicates that the objective examination findings were relatively unremarkable throughout. For example, treatment notes from Sacramento Native American Health Center (in January 2017 and February 2017) show the claimant's attitude was cooperative. Although her mood was euthymic, her affect was full. The claimant's thought process was logical. The claimant's thought content was within normal limits. Her cognition was also within normal limits. She denied hallucinations and delusions. She also denied suicidal or homicidal ideations. The claimant's judgment and insight were intact. Consistent with these findings are the treatment notes from Fair Oaks Psychiatric Associates (from June 2016 through July 2018), which show the claimant was stable with her medications. Mental status examination findings show the claimant was cooperative. Her mood was content, and her affect was stable. The claimant's thought processes were linear. Her attention span and concentration were good. The claimant's recent and remote memories were also intact. She denied suicidal and homicidal ideations. The claimant was oriented to person, place, time, and date. Her judgment was also intact. The claimant has no deficits on mental status examinations. (B18F/3, 6-11; B27F). The undersigned has accounted for the claimant's mental impairments by limiting her to performing routine, repetitive tasks;

limited to no more than occasional changes to the routine work setting; and limited to no more than occasional interactions with member of the public, and coworkers, and supervisors.  Such limitations not only account for the claimant's need of continued outpatient psychotherapy and medication, but also for the improvement in her mental health with her prescribed course of treatment.

In short, while severe medical conditions exist, the objective findings simply do not justify the disabling limitations that the claimant alleges in her testimony.  The evidence does not justify a finding of disability, as the severity of her severe impairments did not require surgery, hospitalization, or extensive medical or mental health treatment.  Her disability could only be based upon subjective complaints, which the undersigned finds are not fully consistent with the evidence, except as to the extent of the residual functional capacity determined. . . above.

CAR 21-24.

Plaintiff argues:

The decision's boilerplate that her "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" (transc., p.22) means she made it past step one to step two of the two-step claimant subjective symptom evaluation required by 20 C.F.R. §§404.1529/416/929 and case law. (See *Smolen v. Chater,* 80 F.3d 1273, 1281–85 (9th Cir. 1996).) At that second step, absent evidence of malingering not asserted here, claimant subjective symptom allegations can only be rejected by "offering specific, clear and convincing reasons for doing so." (*Id.* at 1281) "The clear and convincing standard is the most demanding required in Social Security cases." (*Moore v. Commissioner of Social Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)).

The decision couldn't be more clear about rejecting Ms. Turner based solely on its view her allegations were unsupported by objective evidence, even though this is clearly legally insufficient. Argument this isn't so should be rejected.

Lack of substantiation from objective evidence cannot be the sole basis for rejecting claimant symptom allegations. (20 C.F.R. §§404.1529(c)(2)/416.929(c)(2); *Reddick v. Chater,* 157 F.3d 715, 722 ["Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence"] citing *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1992) (en banc).)

Immediately after its boilerplate paragraph advancing Ms. Turner's allegations to the second step, the decision asserts "stark contrasts" between them "and the objective and clinical findings." (Transc., p.22) There follow two-and-a-half pages summarizing objective physical and mental findings, as has been mentioned, touching down on Ms. Turner's back (transc., p.22), knees (transc., p.23), migraines (*id.*), and mental impairments. (Transc., pp.23–24) At page 23, the decision pauses to say, "Such a body of *objective evidence* is not fully consistent with the claimant's reports of total disability. (Emphasis added.) At the end of this summary, one finds a sentence reading, "In short, while severe medical conditions exist, *the objective findings simply do not justify the disabling*

*limitations the claimant alleges in her testimony.* (Transc., p.24; emphasis added). But objective evidence cannot be the sole basis for this rejection.

This is so clearly what the decision says that it should be held to have meant it. Doubtless, however, defendant will pick through these same pages and strain out the following gnats.

At page 22 of the transcript, in the same paragraph where the decision says Ms. Turner did three months of physical therapy, the decision states "the claimant again declined the physical therapy referral," followed by three citations. One citation, transc., p.1113, reads as if Ms. Turner simply declined a routine offer of a PT referral later that year; the second reference does not say this; the third is to the entire set of PT records reflecting the PT the decision admits she went through. It should also be noted that one of the citations reflects Ms. Turner being counseled by her doctors to do exercise, which is a form of PT. While "an unexplained, or inadequately explained failure to . . . follow a prescribed course of treatment" can cast doubt on the sincerity of pain testimony, (*Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)), all this decision has done is point to a single instance of what looks like mere offer of *further* PT, *a few months after Ms. Turner did a course of it,* which was declined in a context where she was being encouraged to do exercises anyway. This PT was not *prescribed,* and Ms. Turner did not even have to give *reasons* for declining it. (See *Trevizo v. Berryhill,* 871 F.3d 664, 679–680 (9th Cir. 2017) [single instance of declining oxycodone in emergency department for fear of addiction insufficient to support this form of rationale against credibility].)

On page 23 of the transcript, the decision actually states "although she was unable to adequately clean due to decreased mobility, (footnote omitted) . . . she was able to cook and did not require assistance with caring for her personal needs." First, this prefatory clause impeaches the decision's light capacity, for how can someone who can't adequately clean because of decreased mobility stand and walk up to six hours a day, as the decision found? The remainder, about being able to cook and care for her personal needs may be seized upon as constituting "activities of daily living" that somehow impeach Ms. Turner's testimony. Activities of daily living can be considered in assessing credibility. (*Bunnell v. Sullivan, supra,* 947 F.2d at 346) However, even if this sentence fragment were meant to challenge Ms. Turner's credibility, the decision fails to specify which allegations being able to cook and care for personal needs refute, (*Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001) [ALJ must "specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines the testimony"]), and the decision certainly doesn't quantify these capabilities such as to show they refute some generalized allegation of "total disability" or inability to work. (*Fair v. Bowen, supra,* 885 F.2d at 603 ["many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"].)

There is also, further down page 23, the aforementioned information that "The claimant reported that attending Church helped her remain calm, and gave her purpose. She also reported connecting with new friends." The exact same points apply: (1) It's not at all clear this information is offered as impeachment of Ms. Turner's testimony, (2) it's certainly not clear what testimony it refutes, and (3) none of this is quantified or crafted as impeachment. Indeed, on one hand, Ms. Turner was forthcoming with this information, even with information about

socializing with people in her apartment complex for people with mental disabilities (transc., p.42), while also saying she needed someone with her to shop to keep her mind occupied (transc., p.44) and in an earlier hearing testified to paranoid suspicions about others in her complex (transc., p.110); on the other hand, the decision found Ms. Turner 'moderately' impaired for interactions (transc., p.20) and limited her to no more than occasional interactions with the public, coworkers, and supervisors (transc., p.21); so neither this decisional remark nor the overall structure and conclusions of this decision make possible construal of this remark as meaningful impeachment.

Finally, on page 24, there is the word "improvement" applied to Ms. Turner's mental health and the rather fantastic locution that ". . . the severity of her severe impairments did not require surgery, hospitalization, or extensive medical or mental health treatment. [Ergo,] Her disability could only be based upon subjective symptoms, which the undersigned finds are not fully consistent with the evidence, except as to the extent of the residual functional capacity determined in Finding Five above." In a rational world this would be considered mere hyperbole by way of unnecessary conclusion. Were these reasons for impeachment, they fall to the same analysis: it's unclear what allegations they disprove or how they disprove them. Obviously they set up a nonexistent standard for "disability," if it is *that* general allegation that they refute; for surgery, hospitalization, and extensive medical treatment are not requirements to be found disabled. But it is not even a true statement. Ms. Turner underwent carpal tunnel surgery during this claim period, she underwent knee surgery before it began, epidural steroid and facet-joint injections are at least "procedures," and there can be no surgery for mental impairment of the kind she alleges. She may not have been mentally hospitalized during this claim period, but she spent the entire claim period living in supervised housing for people with mental disabilities. The assertion she did not have "extensive medical or mental health treatment" is false. Extensive pain management, including epidural steroid and facet-joint injections, plus physical therapy, plus constant ongoing psychotherapy and medication, plus living in supervised housing for people with mental disabilities is extensive. On page 1265 of the transcript one finds a list of *15 medications* including Norco and two others for pain, Abilify for psychotic symptoms, and Sertraline for depression and anxiety. On pages 1061–62 there's a list of *26 medications,* including Lidocaine cream, morphine sulphate, Bupropion, buspirone, and Xanax. Although the decision speaks of "improvement," it's been pointed out that Ms. Turner was also noted to be "improving" in the earlier ALJ decision, the decision never tells us what this means, it's unclear what allegation "improvement" refutes, and "improvement" can mean many things and is not incompatible with being disabled.

ECF No. 14, pgs. 10-14.

The gravamen of Plaintiff's argument is that the ALJ relied exclusively on a lack of corroborating objective evidence to discount her statements and testimony.  According to Plaintiff: "Lack of substantiation from objective evidence cannot be the <u>sole</u> basis for rejecting claimant symptom allegations," ECF No. 14, pg. 11 (emphasis added), and ". . .[O]bjective

19

1 | evidence cannot be the <u>sole</u> basis for this rejection," <u>Id.</u> at 12 (emphasis added).  Contrary to

2 | Plaintiff's contention, while the ALJ cited to a lack of objective evidence supporting Plaintiff's

3 | allegations of totally disabling pain and other symptoms, the ALJ also cited other factors.

4 | Specifically, in addition to outlining the objective evidence tending to undermine Plaintiff's

5 | credibility, the ALJ cited generally conservative treatment which resulted in stability or

6 | improvement of symptoms.  As the ALJ noted, Plaintiff's conditions never required

7 | hospitalization or surgery.

8 | Moreover, despite complaints of totally disabling, the record reflects that

9 | Plaintiff's physical therapy was cancelled due to failure to attend her last appointment and,

10 | thereafter, Plaintiff declined further physical therapy.  Plaintiff fails to explain why she declined

11 | additional physical therapy, instead arguing that she is not required to do so.

12 | Finally, the ALJ properly noted an inconsistency in Plaintiff's statements.  In

13 | medical treatment notes from Golden Shore Medical Center in 2018, Plaintiff reported that she

14 | was able to complete full activities of daily living with her current regimen of medication and

15 | treatment.  This is inconsistent with Plaintiff's other statements and testimony at the hearing in

16 | October 2018 that she suffers from totally disabling symptoms.

17 | Though the ALJ may not rely solely on a lack of corroborating objective evidence

18 | to discount Plaintiff's credibility, the ALJ cited additional valid reasons for doing so supported by

19 | substantial evidence.  As such, the Court finds no error in the ALJ's credibility assessment.

20 | **C.** **<u>Lay Witness Evidence</u>**

21 | In determining whether a claimant is disabled, an ALJ generally must consider lay

22 | witness testimony concerning a claimant's ability to work.  <u>See</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915,

23 | 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

24 | testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

25 | evidence . . . and therefore cannot be disregarded without comment."  <u>See</u> <u>Nguyen v. Chater</u>, 100

26 | F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of

27 | lay witnesses, he must give reasons that are germane to each witness."  <u>Dodrill</u>, 12 F.3d at 919.

28 | When rejecting third party statements which are similar in nature to the statements of plaintiff, the

20

1   ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement.  See

2   Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving

3   rejection of a third-party family member's testimony, which was similar to the claimant's, for the

4   same reasons given for rejection of the claimant's complaints).

5                   As to lay witness evidence of record, the ALJ stated:

6           The undersigned has also considered reports regarding the claimant's
            functionality provided by third-party sources.  In September 2016,
7           Meranda Ditto, the claimant's daughter, completed a Function Report –
            Adult – Third Party, on which she described the claimant's activities,
8           abilities, and limitations.  There, she reported that the claimant has
            difficulty performing her daily activities due to her pain.  She also
9           reported that as a result of the claimant's mental impairments, she mainly
            stays home with the exception of attending Church and doctors' visits.
10          She further reported that the claimant's impairments affect her ability to
            lift, squat, bend, stand, walk, sit, kneel, remember, follow instructions,
11          understand, concentrate, complete tasks, and get along with others. (B5E).
            However, these statements do not establish that the claimant's
12          impairments are disabling.  The accuracy of the conclusions made by
            third-party sources is questionable because they are not medically trained
13          to make exacting observations as to dates, frequencies, types, and degrees
            of medical signs and symptoms, or the frequency or intensity of unusual
14          moods or mannerisms. (citation omitted).  Moreover, by virtue of the
            relationship with the claimant, they cannot be considered a disinterested
15          third party witness whose reports of restriction in functioning would not
            tend to be discolored by affection for the claimant and a natural tendency
16          to agree with the symptoms and limitations the claimant alleges.  While
            the undersigned grants some weight to these statements, they nevertheless
17          do not evidence greater limitations than those already indicated.

18          CAR 24-25.

19          Plaintiff argues:

20                  The decision also slams the credibility of the third-party function
            report executed by Ms. Turner's daughter. (Transc., pp.368–375) "Lay
21          testimony as to a claimant's symptoms is competent evidence which the
            Secretary must take into account unless he expressly determines to
22          disregard such testimony, in which case he must give reasons that are
            germane to each witness." (Nguyen v. Chater, 100 F.3d 1462, 1467 (9th
23          Cir. 1996)internal quotations and citations omitted.)The decision says (1)
            "these statements do not establish that the claimant's impairments are
24          disabling"; (2) that the accuracy of third-party sources is questionable
            "because they are not medically trained to make exacting observations as
25          to dates, frequencies, types, and degrees of medical signs and symptoms,
            or of the frequency or intensity of unusual moods or mannerisms"; and (3)
26          "by virtue of the relationship with the claimant, they cannot be considered
            a disinterested third party witness whose reports . . . would not tend to be
27          discolored [sic] by affection for the claimant and a natural tendency to
            agree with the symptoms and limitations the claimant alleges." (Transc.,
28          p.26).

                                            21

As to (3) and to some extent (2), "The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value." (*Smolen v. Chater, supra,* 80 F.3d at 1289 (9th Cir. 1996) In further regard to (2), of course lay witnesses can't be expert witnesses; this is definitional; however, as *Smolen* shows, lay observers can be "of particular value" because they see claimants more often and under other circumstances than do medical observers. An ALJ unable properly to absorb his input from such "untrained" sources, who prefers his information from "medically trained sources" because of this incapacity, is imposing improper personal, but illegal, standards on the evidence and should not be functioning as an ALJ.

As to (1), this is simply false. Many things Ms. Turner's daughter says would make for disability, such as that her mother was never able to keep a job long and always was fired (transc., p.369), that her mother's medications make her drowsy and tired (transc., p.370), that her mother is always delinquent in paying her bills and cannot manage money or handle due dates so that she's been evicted and had utilities shut off6 (transc., pp.371, 372), that her mother forgets what time and day she is scheduled to go to church (transc., p.372), that she has lost most of her friends, that her back and knee affect her ability to walk, stand, bend, and lift, while mental illness affects her ability to work with others, that her attention is poor, she is paranoid, and medication makes her drowsy and slur her speech, that she can walk only a few blocks, pay attention only five or 10 minutes, that she can't follow directions because she skips steps and forgets items, that she needs multiple reminders especially for multi-step tasks, (transc., p.373), that paranoia affects her perception of work places, that she can't handle stress, that she can only handle "positive" changes in routines. (Transc., p.375) Her daughter's narrative on page 375 is telling: that her mother returned from Missouri "changed," — "mean, inappropriate, paranoid, hard to be around"; that she moved in with her daughter, but her daughter had to move away, at which point Ms. Turner lost her job and became homeless. Then her behavior got her kicked out of shelters. Even on medication, she was not always rational or medications made her sleepy and caused her to slur words. (Transc., p.375) The decision's assertion that these statements do not establish disability is false. Under the regulations and the findings of this decision, the medical evidence sufficiently established impairments such that *this testimony alone could have established disability*.

ECF No. 14, pgs. 14-16.

The Court finds no error.  First, to the extent Ms. Ditto's statements are consistent with Plaintiff's statements, the ALJ may reject both for the same reasons.  Second, in citing Ms. Ditto's personal relationship with Plaintiff, the ALJ based his decision on a reason germane to Ms. Ditto.

/ / /

/ / /

/ / /

22

# IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment, ECF No. 14, is denied;

2.    Defendant's motion for summary judgment, ECF No. 18, is granted;

3.    The Commissioner's final decision is affirmed; and

4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  January 12, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE